Case 16-1798, Robin Perkins v. Rock-Tenn Services, Inc. Oral argument, 15 minutes per side. Mr. Piper for the appellant. Please record William Piper appearing on behalf of the plaintiff appellant, Robin Perkins. I would like to reserve two minutes for... Fine. Regarding our Equal Pay Act claim, I think there are three major errors that the District Court committed. First, it misanalyzed some of the evidence. Second, it misread some of the evidence. And third, regarding some of the very important evidence, it just did not consider it at all in its opinion. Let me turn to the evidence I believe it misanalyzed. The court basically said that the defendant had basically no option but to pay Mr. Wood $35,000 more or whatever it was because of the collective bargaining agreement. But that basically decision presupposes that the only option was to hire Mr. Wood as an hourly union employee. And of course, the employer had other options that it could have employed. For example, it could have offered or gone out as it had done always in the past and hired another manager, advertised out in public, hire another manager and pay that manager a salary. And the salary would necessarily have been likely more like what Ms. Perkins got, not the substantially more money that Mr. Wood got. So they had some options. But if they were going to hire Wood, they were going to have to pay him this hourly salary. Is that correct? Well, that's not also true either. They could have offered him, they could have said this is a salary position. Mr. Wood, if you want the job, you're going to have to take the job just like Ms. Perkins did as a salary job. But instead, they basically took what was always a management position, a management salary position, and decided, well, we're going to change this into an hourly union position. And because necessarily this is a management position that involves people working in more than 40 hours, he's going to get now all of his overtime and things like that, so necessarily he's going to be paid more. I wonder what the union's reaction to that would have been. Well... If they tried to hire Wood for $70,000. Well, the position, there shouldn't have been any reaction by the union because the position had always been in a salary management position. They seem to have done this to benefit Mr. Wood by leaving it in the, by basically changing it into an hourly union position and therefore giving him all the extra pay. And I think a reasonable jury could have interpreted that as sex discrimination. So they had options. They weren't forced to... Who had the job before your client? Was it a management person or a union person? It was a management. It had always been a salary management position. And was that person male or female? That person was a male. And was that person paid more than Ms. Perkins? I'm not... Yes, it was. I argued at the district court level that he was paid more than Ms. Perkins. I'm focusing at this appellate level more on the comparison to Mr. Wood. But yes, that is true. It had always been a salary management position. So I think a reasonable jury could have interpreted this as just a way, sort of a circumvention in order to pay Mr. Wood more money. Supposing they wanted Mr. Wood, though, and called him in and said, We would really... You've got a lot of experience now at this. You've subbed in. You know what you're doing. And we want to keep you. But if we're going to keep you, we have to pay you $70,000 instead of what you're making now. And Mr. Wood, if he's got sense, says, No, thank you. I'm not interested in taking a $30,000 pay cut. I'd rather keep on the salary. There isn't any intent to discriminate on the basis of gender in that situation, is there? Well, if you interpret that as being what was actually going on... No, I'm feeding you a hypothetical, Mr. Piper. Is that a violation of the Equal Pay Act? If you basically look at it as if we really want Mr. Wood, as opposed to we want a man in the position, and we already have a man in the position, we're going to pay the man more. But if it's just specifically related to Mr. Wood, just assume that all sexes are equal and we just really want Mr. Wood, I suppose you could say that's not sex discrimination. But it's up to the jury to decide that, what's really in the minds of the employer in the circumstance. And I think a reasonable jury could have interpreted this. You've got to understand, the defendant has a very, very heavy burden. The burden is on it to prove its affirmative defenses. And I can't for the life of me understand how the court would have said no reasonable jury could have interpreted these facts to constitute sex discrimination. In granting summary judgment for the party with the burden of proof, that's just astounding to me. There are other errors here. Another error was, I argued at the district court level in my brief, we didn't get oral argument, that the additional 12% pay increase that Mr. Wood got, above and beyond the 12% pay increase he got earlier for moving into the lead position, also constitutes sex discrimination. And this was an additional 12% that he got after Robin Perkins resigned. The district court, however, said, no, that doesn't apply, because Robin Perkins was the one who actually gave him the 12% increase. And that's just a total misreading of the record. There was two 12% increases, one he got previously, but the other one he got was after Ms. Perkins resigned, so she had absolutely nothing to do with the additional 12% increase he got after he replaced Ms. Perkins. So the second 12% pay increase was to compensate him for taking on the, what was once a management job, and now is his job. I'm not sure what it was for. He got an initial 12% increase for taking the lead position, but once they offered him this particular job, they gave him an additional 12% increase. Robin Perkins had nothing to do with that. The court said, no, that doesn't apply, because Robin Perkins actually made that decision, but that's absolutely not true. It's not reflected by the record. Gary Wood testified that when he took this job to replace Robin Perkins, he got an additional 12% pay increase, above and beyond what he would have gotten hourly. And that had nothing to do with the collective bargaining agreement. That was an additional pay he got. So a basic problem is, if Wood had been female instead of male, then you wouldn't have any equal pay claim at all, would you? Correct. So what makes it a jury question, apart from Mr. Wood being male? Well, he's male. I know, apart from that. Yeah, apart from that, the jury reasonably could consider the additional 12% increase as we like the fact that we have a man here. They could interpret that. So basically then, there would be an Equal Pay Act claim any time that a male replacement gets more money than the female worker originally. Well, there's a lot of reasons why a male might be getting additional money that is unrelated to sex. What I'm saying, in this particular situation, where you have an additional promise given to him, what explanation is there for that? So the employer has to say it's for a reason other than sex, that the man was getting more money. The defendant has to absolutely prove that, and no reasonable jury could disagree with that. In this case, the defendant was chiefly relying on the collective bargaining agreement, but this additional 12% increase had nothing to do with the collective bargaining agreement. I think a reasonable jury could interpret that as just an additional plumb given to him because he's a man. But the thing is, because the court misinterpreted the evidence on that, it believed that it was Ms. Perkins who gave him that additional 12% increase. The bottom line is, the court never actually considered that evidence regarding whether or not that constituted sex discrimination because its interpretation of that was that Perkins made that decision. In fact, the evidence is that that was given to Mr. Wood after he replaced Robin Perkins, and Robin Perkins had nothing to do with that, obviously, because she was already gone. So bottom line is, the court just never considered that evidence. I think a reasonable jury could say, look, this additional money they threw at Mr. Wood could be interpreted as sex discrimination. But the bottom line is, the court never considered it. The third thing is, and this is what really upset me, is that throughout my lower court brief, and I spent a long time in the brief arguing this, I said, look, Ms. Perkins attended a meeting among some management officials. She indicated in the meeting, look, we have a problem with detention costs. My suggestion for reducing detention costs would be to have a 24-hour loading, a 24-hour shovel service, and things like that. One of the managers said, well, why isn't this being done? And she said, well, I suggested that, and her boss, Mr. Shannon, his face turned real red. There's also evidence that Gary Wood said that Robin Perkins told me she had been making this suggestion, but Shannon always ignored it. And then there was another person who testified that as well, that Shannon was ignoring her suggestions. And then, when Gary Wood took over, all of a sudden, this became a great idea. As a matter of fact, the defendant, Exhibit 10 in my brief below, I think, page identification numbers 473 to 474, they had a diagram indicating change in shipping manager. And then, after the change in the shipping manager, all of a sudden, the detention costs were way, way lower, suggesting that, well, we got this great employee, new employee, Gary Wood, and he's replacing this incompetent former manager, Robin Perkins, and therefore, implicitly justifying his additional pay because he's making these great decisions. Well, the fact is, the defendant had been, all along, making this suggestion. But the defendant credited Gary Wood with making the decision, didn't give Robin Perkins credit for it, and I would very much suggest that a reasonable jury could have interpreted that as additional evidence of sex discrimination. It's like, a woman makes a recommendation, it's not considered. And all of a sudden, this man comes in, makes the same recommendation, oh, it's all of a sudden a great idea, and we have all these lower detention costs now. So, the court never addressed any of that evidence that I brought up in its opinion. It totally ignored it, or overlooked it, whatever words you want to use, it just never considered that evidence at all. I think it's obvious that, had it considered it, it could only have ruled that this was a jury question. So, I don't have a lot of time, but I would like to say there is another claim here, the COBRA notice claim. It's based on a reply brief affidavit. I think it's procedurally improper, because I didn't get an opportunity to address that below, but also, the affidavit does not comply with the business records exception, because there's no indication it was in the ordinary course of business, and everything else I said in my brief. So, that's also an issue. This case should be reversed and remanded regarding the Equal Pay Act claim, and it should be reversed and remanded, and actually granted summary judgment and claims favor regarding the COBRA notice claim. Thank you. Good morning, Your Honors. Richard Warren, appearing on behalf of the defendant, ROC-10 Services, Inc. May it please the Court, ROC-10 Services, Inc. submits that the District Court Judge Bell made the correct decision as to all claims for the following three key reasons. Number one, the District Court correctly analyzed Plaintiff's Equal Pay Act claim and correctly concluded that the defendant did prove our burden on the affirmative defense. On appeal, Plaintiff argues, doesn't argue about whether Gary Wood's pay was set by a labor agreement. That's pretty much undisputed. What he argues is that what we should have done is, as you just heard him say, hired somebody in a salaried position. I think that's a creative argument, but I don't think there's any case law that I've seen interpreting either the Equal Pay Act or Title VII that allows control over an employer's decision to hire a certain type of job, a classification. Had it always been a management job up until Wood was slotted for the post? So the answer is yes. The prior employer, prior employee in that position was Bob Converse. He was hired in in the late 70s, and he left right around the time that Plaintiff was hired. And I think I'll address that point now. I think one of the reasons why Plaintiff doesn't want to talk about Bob Converse is because Bob Converse completely undercuts her EPA claim. Converse, at the time he left, made $85,000 after having 30 years of experience at the company. Robin Perkins, her last salary, after just four years, was $78,000. And as the district court correctly concluded, had Perkins stayed for just a few more years at Rockton with the rate of increases she was getting, she would have eclipsed Bob Converse's pay far sooner than Converse got to that level. So the irony then, though, is that Mr. Wood is hired to be in this, what was heretofore a management position, and the company is happy paying him a hundred and some thousand dollars. Go ahead, Your Honor. So, I mean, on its face, it looks like there's a pay disparity that is troublesome. Let's put it that way. So I would agree with you there is a pay disparity. Absolutely. I don't know that I would characterize the company's decision about paying Mr. Wood as happy. But there's also no question that we've established the affirmative defense as to Gary Wood for a number of reasons. No one argues that Wood is a unionized employee. No one argues that the labor agreement contains pretty generous, in my opinion, overtime provisions. He got daily overtime after eight hours in every day. He got additional premium payments after 12 hours in a day. He got additional premium payments for Saturday work and additional premium payments for Sunday work. And no one is disputing that Perkins did pick Gary Wood to be in that step-up lead position. Okay, and is there a lead position that is held once Wood takes the position that Perkins had? Correct. And that is excellent evidence that demonstrates that. And that was a woman, wasn't it? Correct, Your Honor. That's excellent evidence as to why gender had no role in this decision. How much does the woman lead get? I don't know Monica Legrand's overall pay. I do know that when Monica Legrand became a lead, she got the first 12.5% increase. I also know that when she works in Wood's absence, she gets that second 12.5% increase. She is treated exactly the same as Wood is. And I think that is harmful and undercuts Plaintiff's claim and demonstrates that the district court reached the right decision here. Your opponent argued that the second 12% was questionable. What would you respond to that? My response is that is a negotiated agreement between the company and the union that was not a gratuitous payment that the company made just to Wood. What is that second 12% for? It was for when Gary Wood was working as a step-up lead in Robin Perkins' absence. So your opponent was arguing that Perkins did not approve that or authorize that. Is that because Perkins had left, as I think your opponent was saying, or is it because it was just part of this CBA or something? I believe the transcript and the record indicates that Perkins authorized that second 12.5% increase, even if, assuming for the sake of argument, Plaintiff is correct. I don't think that gets him anywhere, and I don't think that imputes anything wrong to the district court's decision. But then we'd need to know why was this second 12% provided. Is there some place that you would point us to in the record that we would be able to find the answer to this? At the moment, I cannot cite a specific pinpoint site in front of me, but it is addressed in our brief, both in the LeBrand footnote and also with regard to Gary Wood's pay. But this 12.5% Wood testified, and Wood is a vice president of the union with the authority to make this statement. He testified the second was a negotiated agreement between the company and the union. The Sixth Circuit has said that you can have portions of labor agreements that are not reduced to writing but are still labor agreements. That was one of them. And I also want to add that if this was somehow a gratuitous payment to Wood based on his gender, that would have been an unfair labor practice charge. Companies aren't allowed to just simply give out increases on wages without union approval. And there's no evidence in the record that any ULP was filed or alleged by anyone. And I also want to say... Why does the company move Wood into this heretofore managerial position? Do you have an actual reason for doing this? Yes, so good question. When Perkins left, when she resigned suddenly and abruptly, the company put out a posting for that shipping superintendent position. And within 30, 40 days or so, Tom Shannon, who was working... Tom Shannon was the plant manager who was working with Gary Wood and customer service to hold the fort down, realized things are working a lot better. Shipping detention costs are down. We're able to control the work. We really have no need for this position. So what the company actually did is they simply eliminated a layer of management. And that is well within the company's discretion to do under the EPA and under Title VII. But they still have two people doing this work. They have Wood and LaGrange. So LaGrande is... Sorry, LaGrande. Monica LaGrande is assisting when Gary Wood needs her to, basically. But she's the lead, just like Wood was the lead for the plaintiff here. Right. Correct, so Wood is the lead acting in sort of a pseudo-lead role above her, and LaGrande is working when he's not available. So Wood doesn't have the title that the plaintiff had? Correct. Wood does not have a shipping superintendent position. Although I know that title is not important for Equal Pay Act matters. Correct. Well, I guess the title would be problematic as far as the union is concerned. Sure, it would be problematic. It would be problematic as far as his classification as an employee. Correct. And I think one of the key points to buttress that is I know the district court gave this very short shrift. We argued that was improper. But Gary Wood at no point has had any supervisory duties. He could not set pay rates. He could not discipline. He could not hire. He could not fire. That is a massive distinction between what his role was and what Robin Perkins' role was. What about the other aspect that your opponent argues about the rejection of the ideas of the plaintiff and the same ideas being gleefully accepted when presented by Wood? So I can address that. Even if you assume that that was true, there is absolutely no evidence to demonstrate that that was an adverse employment action or that the basis for doing so was gender. And I think that's fatal to that particular claim. And the district court correctly concluded that it was. As far as the notion goes that the district court failed to address or consider that, I don't believe that's accurate because if you look at page 15 of the opinion, the district court does acknowledge, address, and deal with those issues. And one point I don't want to get lost is that when Robin Perkins was asked, what factors do you believe was used to determine your pay or the pay of others, her answer was, I don't know those factors. It might be cost of living, but I don't know. And I think that also undercuts her EPA and Title VII claim. Perkins attributed her disagreement with Tom Shannon, not to gender, not to anything like that. She characterized it as a disagreement about the utilization of resources in the plan. And although she admitted that Shannon did not take her suggestions about how things should be run, she did say, look, every time I asked the guy for overtime and for other changes, he approved it. And the bottom line is there's no evidence that the reason why Shannon accepted Wood's suggestions is because gender, because he was a male. The record is completely devoid of that, and I think that undercuts plaintiff's argument number two, so to speak. Does the record show that they each gave essentially the same idea as to how to deal with detention problems? I don't believe the record shows that. I believe it's more argument than it is record support. I don't think we got down to that level of granular nuance about who was making what suggestions. The biggest flaw in the EPA and Title VII claim here is that plaintiff is quite simply making an apples-to-oranges comparison, and that's between herself and Gary Wood. I think if she had been able to identify a male shipping superintendent with the same level of experience and seniority who was paid much differently than she was, she might have had a claim under those circumstances, but she can't do that. This is never this case, and the district court correctly concluded that it was not that type of case. I do want to address one thing my opponent said in his brief about the Fair Labor Standards Act, and the argument was Wood became an exempt employee when Robin Perkins left. I think that's incorrect. I think it's inconsistent with the FLSA. If you look at what Wood was doing, he was doing manual labor, he was working in a plant, he was not paid on a salary basis, and he was not able or authorized to manage employees. So that knocks out all the potential exemptions under the FLSA, and he didn't do the type of work that would allow him to become a computer software exempt employee or professional employee. So to say that he was somehow transformed into an exempt employee... But she was an exempt employee, right? Correct. And he was doing her work? I don't agree that he was doing... that the Venn diagram, so to speak, of her work and his overlapped, because she did supervisory work that he could not do. Well, surely she didn't sit around and spend all her time hiring and firing people. I mean, she was making sure that the work got done, and that involves, you know, planning how the department is going to go about doing things, and he must have been doing the same thing unless Mr. Shannon took that up on himself. And it seems reasonable under the record to think that Mr. Wood was doing that work. So there was considerable overlap in their duties. So I agree with you, Your Honor. I agree there was overlap. I also agree that Shannon was doing the supervisory duties that Perkins had formerly done, but I also want to point out that Gary Wood was doing union manual labor-type work, like the actual loading, like the forklift driving, and Perkins said, I never did that stuff. And that makes sense to me, because unions are very eager to point out, look, manager, you're doing union work, you can't do this. So there was not complete overlap, there was not complete unanimity. Does the record indicate what percent of Wood's time was the heavy labor when he took over as the chief of this operation? It does not indicate the percent. I do want to spend a little bit of time, my last remaining time, addressing the Cobra claim. I think it's clear that claim deserved to be dismissed and was properly dismissed. In our main brief, we made the argument that the notices were sent out to the plaintiff, and that complied with the CFR statute on Cobra absolving the company from liability. We attached the affidavit of Carol Fekto, who was a Rock 10 Services, Inc. employee. But the district court rejected that on hearsay grounds. Correct. I'm sorry? So the evidence that you presented initially was rejected, and your opponent is arguing that it was improper to consider evidence attached to a reply brief. That's right. I understand his argument. The plaintiff pointed out in his response he argued hearsay, and in response to that hearsay argument, we attached the affidavit of Clyde Wingate, who was the Ann Hewitt employee. The Sixth Circuit law is clear on this point. Sure, you cannot raise new arguments in a reply brief that you've not raised in your main brief. That's not what we did. The argument had always been raised in the initial brief, and we responded to what was in the response brief, and that was absolutely appropriate under Sixth Circuit rules. Thank you, Your Honor. Thank you. Just a couple of points. The defendant is wrong regarding the record. The additional 12% that Mr. Wood got after he took over and replaced Ms. Perkins was not something that was negotiated. It was not part of the collective bargaining agreement. It was just an additional perquisite for the benefit of Mr. Wood, and the court actually never considered that argument by me because it basically threw it out on the grounds that Robin Perkins was the one who gave that to him, which was absolutely not supported by the record. The additional 12% came in after Mr. Wood replaced Ms. Perkins. Well, there were several additional 12%. Yes, but what I'm talking about is this. You're right, which is, I think, part of the confusion. But this final 12% was given to Mr. Wood, and this is a step up, additional 12% above the earlier 12%, only after Wood took over for Perkins. So Perkins couldn't have had anything to do with making that decision. She wasn't even there. Why wasn't it reasonable for a jury to consider that as evidence of sex discrimination? Well, the court didn't even get there because it basically threw it out on the grounds that Robin Perkins gave it to him, which wasn't true at all. The court also did not address the fact that the defendant gave Wood credit for what were Ms. Perkins' ideas. Again, I think this is evidence of sex discrimination. There are great ideas when a man suggests them, but a woman suggests them? No. I think you could consider that along with everything else. Well, you can almost take judicial notice of that, Mr. Piker. We've all been through that, those of us that have gotten gray hair, at least, know about that. Well, that's the point. It still exists today. That's the point I'm making. Finally, they did not comply with the rule for the business record exception, and it's methodically set forth by me in the brief. There's basically nothing that it was. What was going on before this guy came in, he can't say that it was in an ordinary course of business. He said there's no information that's affidavit that he got the information from someone in the ordinary course of business. It's not difficult to comply with that exception, but they just didn't do it here. Thank you. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?